Lloyd Steven LANE, Plaintiff–Appellee,

v.

J.H. GRIFFIN, Defendant–Appellant,

and

Muhammad Nubee, Chaplain, Rae McNamara, Director of Prisons, James Woodard, Secretary of Corrections, Defendants.

No. 87–7530.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1987.

Decided Dec. 3, 1987.

Sylvia Hargett Thibaut, Asst. Atty. Gen. (Lacy H. Thornburg, Atty. Gen., and Lavee H. Jackson, Associate Atty. Gen., Raleigh, N.C., on brief), for defendant-appellant.

Martha Elizabeth Johnston, Greensboro, N.C., for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

POWELL, Associate Justice:

The primary question presented is whether the district court instructed the jury to apply an erroneous legal standard in determining whether a prison restriction imposed by appellant James Harold Griffin violated appellee Lloyd Steven Lane's First Amendment rights. We also address the propriety of the district court's exclusion of certain evidence at trial as hearsay, and its failure to address the issue of qualified immunity prior to the trial on the merits.

## I.

Appellee Lane, a convert to the Islamic religion, was incarcerated in the North Carolina Prison System in 1978. In April 1984 he was transferred from the Scotland County Subsidiary Prison Unit in Wagram, North Carolina to McCain Correctional Center in McCain, North Carolina ("McCain"). Based on the record at trial, it appears that at some point in May 1984 Lane had a discussion with Griffin, the superintendent at McCain, in which he requested that Griffin permit the Muslim inmates at McCain to participate in an Islamic religious service known as Jumu'ah.[1] Griffin testified at trial that prior to appellee's request no Jumu'ah services had ever been conducted

---

1. Jumu'ah is a congregational prayer service required by the Koran and must be held every Friday after the sun reaches its zenith and before the afternoon prayer. It consists of communal prayers and a brief sermon, led by the Imam, who is chosen from the local Islamic community. The service lasts from thirty minutes to an hour.

at McCain during his employment there, he knew little about the Muslim religion, and he knew nothing about Jumu'ah services. Griffin stated that he told appellee that he would speak to Muhammed Nubee, who was then the Islamic Services Coordinator for the North Carolina Department of Corrections, about his request. After talking to Nubee and Superintendent Osborne of the prison unit in Scotland County where Lane had been an inmate, Griffin decided not to allow Jumu'ah services to be initially organized or conducted by a McCain inmate. (App. 285, 276–79). As a prerequisite to allowing Jumu'ah services to be conducted at McCain, Griffin required that the services be organized and established by Nubee and that an outside volunteer be brought into the prison to provide overall supervision. (App. at 283–85). The reasons offered by Griffin at trial for this restriction were his security concerns about elevating an inmate to this type of leadership position (App. at 278–79; 304) and his security concerns, in particular, with respect to appellee Lane. (App. 305; 307–08).

Nubee was delayed in organizing Jumu'ah services at McCain and outside volunteers could not be found for Friday afternoons. Accordingly, the restriction imposed by Griffin resulted in no Jumu'ah services taking place at McCain for a period of time.[2] On September 13, 1984 appellee filed the complaint in this action, under 42 U.S.C. § 1983, against various individuals, including appellant Griffin. Lane alleged that Griffin was violating his First Amendment rights by refusing to allow him to participate in Jumu'ah services. He sought declaratory relief, $100,000 in compensatory damages, and $100,000 in punitive damages. Beginning on January 18, 1985, Jumu'ah services were conducted at McCain on a regular basis. Lane was transferred from McCain in May 1985.

In September 1985 the defendants moved for dismissal of the complaint or, in the alternative, summary judgment. This motion was heard by a magistrate, and in July 1986 the district court adopted the magistrate's Findings and Recommendations and dismissed the action against all named defendants except Griffin. Griffin moved for reconsideration of the court's summary judgment decision on the ground, among others, that he was entitled to qualified immunity. The magistrate recommended that this motion be denied, and Griffin filed objections to this recommendation. Without having ruled on the motion, the district court brought the case to trial before a jury on October 14, 1986. The jury found that appellant Griffin had violated appellee's First Amendment right to practice his religion, and that he had done so in bad faith. It awarded Lane $700.00 in compensatory damages and $3,000 in punitive damages. Following the entry of judgment, Griffin moved for a judgment notwithstanding the verdict or, in the alternative, that a new trial be granted. Both requests were denied by the district court in a memorandum order entered on January 21, 1987.

On this appeal appellant Griffin argues that the district court improperly instructed the jury to consider whether the restriction he placed on Lane's freedom to conduct and participate in Jumu'ah services was the "least-restrictive" means of satisfying his security concerns. Griffin also argues that there was testimony offered at trial for the purpose of showing he had acted reasonably in refusing Lane's requests, and that the district court improperly excluded this testimony as hearsay. Finally, Griffin contends that the district court should have specifically addressed the issue of qualified immunity prior to a trial on the merits.[3] Appellee Lane insists that the instruction at issue did not require the jury to employ a least-restrictive alternative analysis, and that during the trial the district court properly excluded certain testimony as hearsay.

---

**2.** The above statement of facts is intended only as a means of putting the legal questions at issue in context. We do not resolve any issues of fact on this appeal, and any disputes as to the facts that may arise are to be resolved, if necessary, on remand.

**3.** Griffin raised other objections that we need not reach in view of our disposition of this appeal.

## II.

### A.

██ The Supreme Court recently clarified the standard for reviewing the legality of prison restrictions that affect the exercise of prisoners' constitutional rights. Although acknowledging that prisoners are entitled to protection of their constitutional rights, in *Turner v. Safley*, — U.S. —, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 2261. The Court explained that the absence of ready alternatives is evidence of the reasonableness of a prison regulation, and that the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable. *Id.* at 2262. Therefore, it is now clear that "the presence or absence of alternative accommodations of prisoners' rights is properly considered a factor in the reasonableness analysis rather than a basis for heightened scrutiny." *O'Lone v. Estate of Shabazz*, — U.S. —, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987) (footnote). The reason for this less rigorous standard of review is that, particularly in a federal court's review of a state penal system, the inordinately difficult undertaking of prison administration and concerns about separation of power "counsel a policy of judicial restraint." *Turner*, 107 S.Ct. at 2259.

The Court also rejected arguments that more rigorous scrutiny is appropriate unless a court concludes that the activity from which a prisoner seeks protection is "presumptively dangerous," *Turner v. Safley*, 107 S.Ct. at 2261, and that heightened scrutiny is appropriate whenever regulations effectively prohibit, rather than simply limit, a particular exercise of constitutional rights. *O'Lone v. Estate of Shabazz*, 107 S.Ct. at 2405 (footnote). Moreover, in *O'Lone* the Court not only reiterated the standard articulated in *Turner*, but it also specified that it was improper to

establish "a separate burden on prison officials to prove 'that no reasonable method exists by which [prisoners'] religious rights can be accommodated without creating bona fide security problems.'" *Id.* at 2405 (quoting *Estate of Shabazz v. O'Lone*, 782 F.2d 416, 420 (3d Cir.1986)).[4]

Although the district court in this case did not have the benefit of these recent decisions at the time it charged the jury, they establish the appropriate legal standard that should have been applied. The fact that the restriction at issue here arose from a policy decision made by the superintendent of the prison, rather than a regulation, does not require a different analysis. One of the restrictions at issue in *O'Lone*, was simply a policy memorandum issued by the prison officials at Leesburg. *See O'Lone*, 107 S.Ct. at 2403. Moreover, the reasons articulated by the Court in *Turner* and *O'Lone* for applying a "reasonably related" standard to prison regulations apply with equal force to a policy decision made by a prison official. In *Turner* the Court explained that:

> Subjecting the *day-to-day judgments* of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand.

107 S.Ct. at 2262 (emphasis added).

### B.

██ The district court instructed the jury that:

> It is the defendant's burden to justify any restriction on the right of an inmate to the free exercise of religion, and his burden cannot be met simply by asserting reasons which are not believable, or

---

**4.** This principle follows logically from the Court's holding in *Turner* that "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." 107 S.Ct. at 2262.

by imposing restrictions which are not—which are broader than is necessary to serve the interest asserted.

(App. at 417).

This instruction is erroneous because, by requiring that any prison restriction be no "broader than is necessary," the court articulated a least-restrictive alternative standard of review rather than the appropriate "reasonably related" standard.[5] In rejecting the standard used by the district court in *Turner*, the Supreme Court pointed out that the "least-restrictive" test articulated in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) invalidates a restriction "'if its sweep is unnecessarily broad.'" *Turner*, 107 S.Ct. at 2264 (footnote) (quoting *Procunier v. Martinez*, 416 U.S. at 414, 94 S.Ct. at 1811 (emphasis added)).[6] In light of this, the Court in *Turner* found that the district court's inquiry as to whether certain regulations were "needlessly broad" was "not just semantically different from the [reasonably related] standard we have articulated ... it is the least-restrictive alternative test of *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)." 107 S.Ct. at 2264 (footnote). We see no material difference between the standard rejected by the Court in *Turner*, that sought to determine whether restrictions were "needlessly broad," and one that inquires whether a restriction is "broader than is necessary," as did the standard articulated by the district court here. Both standards are equivalent to a least-restrictive alternative test, and it was error to apply such a standard of review in this case.

We therefore vacate the judgment below, and remand the case for further proceedings consistent with our opinion.

### III.

■ Because we remand this case, we think it prudent to address two other objections raised by appellant. One of these involves an issue that should be considered by the district court prior to a new trial on the merits and the other objection involves an issue that would necessarily arise at a new trial.

### A.

Muhammed Nubee, who was the Division of Prisons Islamic Coordinator, testified as a witness for the defense at trial. Nubee was called to testify about his discussions with Griffin concerning security problems, involving appellee Lane, that had arisen at Scotland County and Caledonia prisons while Lane was an inmate at those institutions. The court restricted the content of Nubee's testimony to those statements he had made to Griffin that were based on "conversations he had with Mr. Lane, and that's all." (App. at 354). The court justified this limitation on the ground that any other information concerning appellee that was relayed to Griffin by Nubee was inadmissible hearsay. (App. at 349–56).

Rule 802 of the Federal Rules of Evidence provides that hearsay is not admissible unless it fits within a prescribed exception. Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.*" (emphasis added). Griffin sought to introduce Nubee's testimony concerning what Nubee had told him about Lane for the purpose of showing the impact it had on Griffin's as-

---

**5.** Moreover, the court's instruction erroneously shifts the burden to appellant to "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 107 S.Ct. at 2262. It is improper to place the burden on a prison official to show that no reasonable method exists by which religious rights can be accommodated without creating bona fide security problems. *See O'Lone*, 107 S.Ct. at 2405. In order for a such a restriction to be legal it is necessary only that it be reasonably related to a legitimate security concern.

**6.** The decision to apply a heightened scrutiny in *Martinez* turned on the fact that the challenged regulation caused a "consequential restriction on the First and Fourteenth Amendments rights of those who are *not* prisoners." *Procunier v. Martinez*, 416 U.S. at 409, 94 S.Ct. at 1809 (emphasis added). Here the restriction impacted only on the constitutional rights of a prisoner.

sessment of security risks and the need for restrictions. He did not seek the admission of this testimony to prove the truth of its content. (App. at 349–51). In other words, Griffin was not attempting to establish that Lane actually had created certain security problems at the Scotland County and Caledonia prisons, but rather his purpose was to show that Griffin had been told by Nubee that Lane's conduct implicated prison security concerns. Because the basis and nature of Griffin's security concerns were material to issues presented in this case, the evidence was relevant and should not have been excluded as hearsay.[7]

### B.

■ Prior to the trial on the merits, and in his motion for reconsideration, Griffin claimed he was entitled to qualified immunity. The district court simply failed to address this issue. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) the Supreme Court stated that:

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.

By failing to rule on the issue of qualified immunity prior to the trial on the merits, the district court failed to act consistently with a basic purpose of the *Harlow* decision. The question concerning Griffin's entitlement to qualified immunity is whether his conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. This is an objective standard of reasonableness judged in light of the then existing law and without regard to the official's

good faith. Of course, the ultimate question is the *factual* issue whether Griffin's conduct was indeed reasonably related to a legitimate penological interest. On remand, however, prior to conducting a new trial, the court should confront the *legal* issue whether the law governing the scope of appellee's right to participate in Jumu'ah services, at the time of his request, was sufficiently clear that Griffin could have known whether his conduct violated appellee's constitutional rights.

### IV.

We vacate the judgment of the district court and remand for proceedings consistent with our decision.

*Reversed and Remanded.*

---

**7.** In its memorandum order denying Griffin's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, the district court stated that "the admission of plaintiff's alleged misconduct at other correctional institutions was properly excluded" because it was "highly prejudicial and of little probative value." (App. at 88). We do not reach the

question of whether this is a proper basis for excluding Nubee's testimony because the district court was not specific as to which evidence it excluded for this reason. Also, this was not the reason relied upon by the court at the trial when it excluded Nubee's testimony only because it was "hearsay."