Cheryl Anne **BATTLES** et al.

v.

The **ANNE ARUNDEL COUNTY BOARD OF EDUCATION** et al.

Civ. No. Y–95–508.

United States District Court, D. Maryland.

Nov. 17, 1995.

---

**2.** *See* 42 U.S.C. § 1981a.

Cheryl Anne Battles, pro se.

P. Tyson Bennett, Columbia, Maryland; B. Darren Burns, Annapolis, Maryland; J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland; Shelly E. Mintz, Assistant Attorney General, Baltimore, Maryland; for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

Cheryl Anne Battles and her daughter Emily Elizabeth McCann filed suit against Anne Arundel County Superintendent of Education, Anne Arundel County Board of Education, and Anne Arundel County Department of Social Services seeking relief from certain provisions of the Maryland education law and related regulations. Defendants' motions to dismiss the Complaint are now pending before the Court.

## I. BACKGROUND

Battles states that the public school system indoctrinates children in atheism, non-Christian religions, secular humanism, evolutionism and other teachings which are contrary to her religious beliefs. To avoid exposing her daughter Emily to this environment, Battles educates Emily at home.

Maryland requires children to attend public schools "unless the child is otherwise receiving regular, thorough instruction during the school year in the studies usually taught in the public schools to children of the same age." Md.Educ.Code Ann. § 7–301(a)(1) (1992). The regulations promulgated under this law allow parents to provide home education to children as long as they meet the statutory standard. COMAR 13A.10.01.01(A). However, the State retains a supervisory role over children's education

and requires instruction in English, mathematics, science, social studies, art, music, health, and physical education. COMAR 13A.10.01.01(C)(2). The parent must maintain a portfolio of instructional materials and examples of the child's work to demonstrate that the child is receiving regular and thorough instruction in those areas, and must permit a representative to observe the teaching provided and review the portfolio at a mutually agreeable time and place not more than three times a year. COMAR 13A.10.01.01(D)–(E). To ensure compliance with these regulations, parents who educate their children at home must sign a consent form indicating that they have read and understand the regulations. COMAR 13A.10.01.01(B). Battles has refused to sign the consent form and will not allow the local school system to monitor Emily's education as required by law.

Battles was also investigated as a "possible child neglector" by the Anne Arundel County Department of Social Services after it received a complaint from an undisclosed source. Child neglect includes "failure to give proper care and attention to a child by any parent" under circumstances that indicate harm or substantial risk of harm to the child's health or welfare or that indicate mental injury or substantial risk of mental injury. Md.Fam.L.Code Ann. § 5–701(p). Under Maryland law a local department of social services must conduct an investigation upon receiving a report of possible child neglect. *Id.* § 5–706(a), (b). The investigation by Anne Arundel County Department of Social Services found that neglect was "unsubstantiated" and Battles' name was entered on a central registry after she was given notice of the finding. *Id.* §§ 5–714(a), 5–706.1, 5–715. She did not request a hearing as allowed by law. *Id.*

Plaintiff then filed suit in this Court, objecting to (1) state supervision of Emily's education in general, (2) signing the Consent Form in particular, and (3) the child neglect investigation. Battles believes that "to subject her child's education to the scrutiny, regulation and oversight of an agency charged by law with implementing atheistic, antichristian education, would be a sin

against the Plaintiff's conscience and would be insulting to her Christian God and Christian beliefs. . . ." Complaint ¶ 13. She alleges that the Consent Form is unconstitutional because it authorizes the Board of Education to withdraw her daughter from home education if she cannot furnish proper portfolios and other proof of educational quality. Complaint ¶ 18. As a result, signing this form, she states, "is contrary to Cheryl Battles' belief that by so signing, Ms. Battles would enter into a contractual relationship with an agency charged . . . with teaching atheism. . . ." Complaint ¶ 28. In addition, Battles argues that Emily's education should be measured by national comprehensive tests rather than "process related criteria" used in Maryland schools such as the number of hours spent on education and the kind and difficulty of subjects taught. Complaint ¶ 19–20.

Battles also alleges that the child neglect investigation was launched after she refused to allow the State to supervise the education of Emily to intimidate and harass her into complying with the law.

Battles attempts to crystallize her general grievances in a three-count Complaint. Count I asks for a declaration that Plaintiffs have the right to practice the free exercise of their religion and are exempt from any law, including the Maryland education law at issue, that interferes with that right.

Count II claims that Defendants' implementation of the home education provisions and investigation of child neglect violate 42 U.S.C. § 1983 because they restrict Plaintiff's right to free exercise of religion under the First Amendment. No relief is specifically requested under this count.

Count III requests equitable relief in the form of a permanent injunction preventing the Anne Arundel County Department of Social Services from listing Battles on a central registry of "possible child neglectors." Under Count III Battles also requests monetary damages.

## II. STANDARD

■ Defendants seek dismissal of this suit on the grounds that Battles has failed to

state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a Motion to Dismiss under Rule 12(b)(6), the factual allegations of the complaint must be taken as true and all reasonable inferences must be viewed in favor of the plaintiff. *Martin Marietta Corp. v. International Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir.1992). A complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of the claims which would entitle the plaintiff to relief. *Id.* at 97. However, this Court is not bound to accept conclusory allegations concerning the legal effect of events set out in the complaint if the conclusions do not reasonably follow from the plaintiff's description of what happened. *Ficker v. Chesapeake & Potomac Telephone Co.*, 596 F.Supp. 900 (D.Md.1984). This Court may also treat a Motion to Dismiss as a Motion for Summary Judgment if appropriate. Fed.R.Civ.P. 12(c).

## III. COUNT I—DECLARATORY JUDGMENT

Courts are authorized to declare the right of any interested party seeking declaratory judgment when there is a "case of actual controversy within its jurisdiction...." 28 U.S.C. § 2201(a). The Declaratory Judgment Act provides a remedy for the resolution of substantive rights, making resolution of Count I dependent upon whether Battles states a right of action in the other counts.

It must be noted that declaratory judgment claims are subject to the well-pleaded complaint rule. It is possible to interpret Battles' federal claims as raising defenses to Maryland's attempted enforcement of the education laws, which would place the Complaint in jeopardy of the well-pleaded complaint rule. However, the better view is that the Complaint asserts affirmative claims under the First Amendment and the Religious Freedom Restoration Act. Alternatively, her claims can be interpreted as raising the issue of whether Maryland laws are preempted by the Constitution and federal law, which would also satisfy the well-pleaded complaint rule.

## IV. COUNT II—SECTION 1983

Battles alleges that Maryland's system of monitoring home education infringes upon her right to exercise freely her religious beliefs. Although she did not request any specific relief, this Court will determine the validity of Count II. To maintain a claim under 42 U.S.C. § 1983, Plaintiffs' allegations, taken as true, must show infringement upon her right to practice her religion.

As an initial matter, this Court must determine the prevailing law. In *Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Supreme Court held that a law does not violate the Free Exercise Clause if it is "religion-neutral" and "generally applicable." Subsequently, Congress sought to reinstate the previous "compelling interest" standard used in free exercise cases by passing the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (1994 Supp.) ("RFRA").

The Fourth Circuit has recognized separate Constitutional and statutory standards to determine whether certain laws infringe upon religious freedom. In *Goodall by Goodall v. Stafford Co. School Bd.*, 60 F.3d 168 (4th Cir.1995), the court held that a county was not required to provide a cued speech transliterator in a private sectarian school. First, the court analyzed the RFRA claim by referring to pre-*Smith* cases and held that the plaintiffs did not meet the threshold test of showing a "substantial burden" on their exercise of religious beliefs. Second, the court analyzed the First Amendment claim and held that the county policy was either generally applicable and valid under the *Smith* standard or did not impose a substantial burden on the plaintiffs and was therefore valid under the "compelling interest" test.

In *American Life League, Inc. v. Reno*, 47 F.3d 642 (4th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995), the court held that the Freedom of Access to Clinic Entrances Act did not infringe upon the free exercise of religion. First, the court held that the Access Act does not violate the Free Exercise Clause of the First Amendment as interpreted in *Smith* because it is a

generally applicable law that is neutral towards religion. Second, the Access Act did not violate RFRA because prohibiting threats of force and physical obstruction is the "least restrictive means" available to protect clinics, clinic workers, and access to clinics.

Following the Fourth Circuit's directives, Battles' section 1983 claim will be analyzed separately under the First Amendment and the RFRA. Even though Battles' Complaint refers only to a First Amendment claim, the Religious Freedom Restoration Act is mentioned in a later Opposition Memorandum and will be addressed for the sake of completeness.

## A. *First Amendment*

■ Battles claims that Maryland's compulsory education law and home education requirements infringe upon the free exercise of her religious beliefs as guaranteed by the First Amendment. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof . . . .*" U.S. Const. amend. I (emphasis added). This Clause is applicable to the States by incorporation into the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

In *Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Supreme Court held that the Free Exercise Clause permits a state to include religiously inspired use of peyote within the reach of a state's general criminal prohibition of that drug. The Court reached this holding by distinguishing *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and other cases that used a "compelling interest" test in free exercise cases and announcing a two-part test for determining whether a law is constitutional. First, it must be a valid and generally applicable law. *Smith,* 494 U.S. at 878, 110 S.Ct. at 1599. Second, the burden on religion must be incidental and not the purpose of the law. *Id.* The second prong of this test was refined in *Church of the Lukumi Babalu Aye, Inc. v. City of*

*Hialeah,* —— U.S. ——, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), which struck down a law banning animal sacrifices because the Court found that it was specifically adopted to suppress a central element of the Santeria religion.

The Maryland education law at issue applies to all children in the state; indeed, this is the crux of Battles' Complaint, for she desires a special exemption for her child. Furthermore, Battles does not claim that the education laws were passed with the purpose of suppressing religion. Her conclusions that the public schools indoctrinate children in an atheistic or antichristian world view are not sufficient factual allegations to show that the education laws are designed to suppress her religion. Thus, Battles has failed to state a claim under the First Amendment as interpreted in *Smith.*

In her Memorandum in Opposition to the Motion to Dismiss filed by Defendant Board of Education, Battles attempts to escape this conclusion by relying on dictum in *Smith* where the Court stated:

> The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved . . . the Free Exercise Clause in conjunction with other constitutional protections, such as . . . the right of parents, acknowledged in *Pierce v. Society of Sisters,* 268 U.S. 510, 69 L.Ed. 1070, 45 S.Ct. 571, 39 A.L.R. 468 (1925), to direct the education of their children, see *Wisconsin v. Yoder,* 406 U.S. 205, 32 L.Ed.2d 15, 92 S.Ct. 1526 (1972) (invalidating compulsory school-attendance laws as applied to Amish parents who refused on religious grounds to send their children to school.)

*Smith,* 494 U.S. at 881, 110 S.Ct. at 1601 (citations omitted). Applying this language to her situation, Battles claims that Maryland education law infringes upon her religious beliefs in conjunction with an amalgam of rights she calls the "fundamental right against standardization of education." Her reliance on these cases is misplaced, as they are readily distinguishable.

*Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), held that Oregon could not force children to attend state primary schools and thereby limit education to one forum. Unlike the statute at issue in *Pierce,* the Maryland education laws liberally permit private or home education as long as certain educational standards are met. The Court's reasoning emphasized that private schools would be put out of business and that parents would be required to choose instruction from public teachers; the Maryland education laws do not mandate either outcome. Moreover, *Pierce* does not support Battles' proposition that a state cannot oversee non-public education, stating

> No question is raised concerning the power of the State reasonably to regulate all schools, to inspect, supervise and examine them, their teachers and pupils; to require that all children of proper age attend some school, that teachers shall be of good moral character and patriotic disposition, that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which is manifestly inimical to the public welfare.

*Pierce,* 268 U.S. at 534, 45 S.Ct. at 573. This language limits the holding of *Pierce* and prevents undue interference with state education systems.

In *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Court held that the State could not charge members of the Old Amish religion for violating the compulsory school-attendance law when they refused to send their children to school after the eighth grade. In reaching this holding the Court emphasized that it was a central tenet of the Amish belief that members disassociate themselves from modern society, that education after the eighth grade would greatly endanger their religious beliefs, and that their alternative mode of continuing informal vocational education was adequate preparation for membership in their rural, self-sufficient society. These factors, balanced against the State's interest in basic universal education, dictated relief from compulsory education beyond the eighth grade. The factual allegations in Battles' complaint are quite different, claiming that her daughter received the equivalent of a first or second grade education, which is not comparable to the educational level held sufficient to satisfy Wisconsin's interest in *Yoder.* More importantly, Battles does not allege that separation from modern society is a central tenet of her religion or that she lives in a separate, self-sufficient community. *See Duro v. Dist. Atty., Second Jud. Dist. of N.C.,* 712 F.2d 96 (4th Cir.1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 998, 79 L.Ed.2d 230 (1984) (distinguishing *Yoder* in similar circumstances). Consequently, the Maryland education laws do not pose a grave threat to Battles' religious belief and do not violate the First Amendment.

**B. *Religious Freedom Restoration Act***

■ Battles also claims that the Maryland education laws violate the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (1994 Supp.) ("RFRA"). Congress passed the Act in reaction to the *Smith* decision in an attempt "to restore the compelling interest test." § 2000bb(b)(1). Rather than view RFRA as overturning the Supreme Court's interpretation of the First Amendment, it is proper to view the Act as creating a separate statutory "claim or defense to persons whose religious exercise is substantially burdened by the government," § 2000bb(b)(2), which refers to pre-*Smith* case law. *See American Life League, Inc. v. Reno,* 47 F.3d 642 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995); *Goodall by Goodall v. Stafford Co. School Bd.,* 60 F.3d 168 (4th Cir.1995). The statutory defense provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability...." § 2000bb–1(a). The government may act in such a manner only after it demonstrates that the burden (1) furthers a compelling governmental interest and (2) is the least restrictive means of furthering that interest. § 2000bb–1(b).

■ As a threshold matter, Battles must allege facts sufficient to demonstrate that the Maryland education law substantially burdens her exercise of religion. A "substantial burden" exists in the Constitutional sense

when governmental action compels a party to affirm a belief they do not hold, discriminates against an individual or group because of religious belief, inhibits the dissemination of particular religious views, or pressures a party to forego a religious practice. *Sherbert v. Verner,* 374 U.S. 398, 402–404, 83 S.Ct. 1790, 1793–1795, 10 L.Ed.2d 965 (1963) (collecting cases).

■ Although Maryland law permits Battles to educate her child at home, she claims that the required curriculum promotes atheism, paganism, and evolutionism, diminishes the importance of Christian holidays by introducing secular figures like the Easter Bunny and Santa Claus, and generally promotes a "Godless world view." These allegations do not establish that Maryland imposes a substantial burden on her exercise of religion. Plaintiffs do not have to alter their religious beliefs or forego acts necessary to their beliefs to comply with Maryland's monitoring requirements. More to the point, Maryland is not required to "subsidize" Battles' particular religious beliefs by eliminating contrary viewpoints from the required curriculum. *Cf. Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 546, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983) (government does not have to subsidize the First Amendment right to lobby government by granting tax-exempt status to a non-profit organization); *Goodall by Goodall v. Stafford Co. School Bd.,* 60 F.3d 168, 171–172 (4th Cir.1995) (state does not have to provide cued speech transliterator in child's private sectarian school); *McCarthy v. Hornbeck,* 590 F.Supp. 936, 945 (D.Md.1984) (state does not have to provide transportation to private parochial schools); *Fordham University v. Brown,* 856 F.Supp. 684 (D.D.C.1994) (government does not have to subsidize broadcast of religious mass by radio station). Indeed, Maryland is prohibited from doing so by the Establishment Clause of the First Amendment. *See Edwards v. Aguillard,* 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (holding that Louisiana cannot require teaching creationism for the same amount of time that evolution is taught). Because Battles' religious beliefs were not substantially burdened, she has no right of action under RFRA.

The section 1983 claim must be dismissed because Maryland did not infringe any federal right of Battles.

## V. COUNT III—INJUNCTIVE RELIEF

■ Battles alleges that as a result of her listing on the central registry of suspected child neglectors she was "informed by the Department of Social Services in writing that she may very well be precluded from ever obtaining a day care license or becoming a foster parent...." Complaint, ¶ 26. This statement was on the back of a form she received from Maryland informing her that she was listed as an "unsubstantiated child neglector." The back of the form outlined procedures to appeal the listing, and states that one of the consequences of not appealing was that "you may be denied approval as a foster care provider, adoptive parent or day care provider." For the first time in her Memorandum in Opposition of Motion to Dismiss, Battles claims that she wants to become a foster parent or adoptive parent in the future.

Social Services claims that the statement on the back of the form is incorrect. As a matter of law, only protective services staff and law enforcement personnel can obtain information from the central registry for the purpose of investigating a report of possible child abuse or neglect. Md.Fam.L.Code Ann. § 5–714. Therefore it is legally impossible for Battles to be injured in the manner she complains of. Because she does not allege any other injury, and listing on a confidential registry is not an injury in itself, *see Hodge v. Jones,* 31 F.3d 157, 164–167 (4th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994), she does not have standing to request this relief and this Court has no jurisdiction to hear her claim. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Battles therefore has no right in this Court to have her name removed from the central registry of suspected child neglectors.

## VI. CONCLUSION

Because Battles has no Constitutional or statutory right to avoid compliance with the

Maryland law regarding State monitoring of home education and no right in this Court to have her name removed from the central registry of child neglectors, Defendants' motions to dismiss are granted.