# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-3907

GARRY A. BORZYCH,

*Plaintiff-Appellant,*

v.

MATTHEW J. FRANK, *et al.,*

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-C-0632-C—**Barbara B. Crabb**, *Chief Judge.*

———————

SUBMITTED FEBRUARY 17, 2006—DECIDED MARCH 2, 2006

———————

Before BAUER, EASTERBROOK, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Garry A. Borzych contends in this action under 42 U.S.C. §1983 that prison officials in Wisconsin violated the Constitution and §3 of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc-1, by refusing to allow him to possess the books *Creed of Iron, Temple of Wotan,* and *The NPKA Book of Blotar,* which he says are necessary to practice his religion. Borzych identifies his religion as Odinism (or Odinic Rite), which like Asatru and Wotanism entails the worship of Norse gods. Borzych maintains that these books are religious texts. Wisconsin's prison system contends, by

contrast, that the books are non-religious and promote white-supremacist violence.

Borzych's best argument rests on RLUIPA, which prohibits prisons that receive federal funding from substantially burdening an inmate's religious exercise unless the step in question is the least restrictive way to advance a compelling state interest. See *Cutter v. Wilkinson*, 125 S. Ct. 2113 (2005); *Lindell v. McCallum*, 352 F.3d 1107 (7th Cir. 2003). See also *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, No. 04-1084 (U.S. Feb. 21, 2006) (discussing the materially identical provision in the Religious Freedom Restoration Act, 42 U.S.C. §2000bb-1). The first amendment, by contrast, does not require the accommodation of religious practice: states may enforce neutral rules. See *Employment Division of Oregon v. Smith*, 494 U.S. 872 (1990). See also *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). Given this difference, it is unnecessary to discuss the Constitution further.

Defendants concede that Odinism is a religion, and the district court assumed that denying Borzych these books substantially burdened this religion's exercise. The judge concluded, however, that defendants' interest in preserving security in the prison system is compelling because these books advocate violence. The court also found that banning the books is the least restrictive means to advance that interest, which meant that Borzych does not have a winning claim under RLUIPA. 2005 U.S. Dist. LEXIS 19840 (W.D. Wis. Sept. 9, 2005).

We doubt that keeping these books out of the prison substantially burdens anyone's religious exercise. Borzych's only evidence on this point is his unreasoned say-so, plus equivalent declarations by other inmates. This is insufficient to create a material dispute that would require a trial. See *Kaufmann v. McCaughtry*, 419 F.3d 678, 682-83 (7th Cir. 2005); *Stefanow v. McFadden*, 103 F.3d 1466, 1471 (9th

Cir. 1996). No objective evidence supports his assertion that the books are important to Odinism. Defendants submitted the report of Timothy Tangherlini, a professor at UCLA with expertise in folklore and Old Norse language and literature, who concluded that *Temple of Wotan* and *Creed of Iron* are not Odinic or even religious but are secular works promoting racism. As for *The NPKA Book of Blotar*: its own author says that it is not an authoritative text on Odinic practices and that the rituals it describes "are by nature fictitious". A book about fictitious rituals, rather than actual ones, is not vital to any religious practice.

At all events, the record establishes that the prison system's ban is the least restrictive means to promote a compelling state interest in safety. Borzych does not seriously contest the district court's conclusion that these books advocate violence. An interest in curtailing violence within prison walls is compelling. Borzych asserts that the warden has exaggerated the security concerns, but a prisoner's view of what promotes prison security is hardly objective. Borzych maintains that the prison has excluded these books simply because they endorse white-supremacist views, but this misstates Wisconsin's position. Defendants' principal argument is that the books promote violence to exalt the status of whites and demean other races; it is the means rather than the underlying racist view that the defendants contend (and we hold) may be forbidden in prisoners' reading matter.

Borzych suggests that the defendants redact the passages that advocate violence. Redaction, though, is not a realistic option, given that the books range in length from 175 to more than 400 pages, and their promotion of violence is thoroughgoing. All three books as a whole promote violence as an acceptable way of advancing racist beliefs. Paul Hestekind, a correctional sergeant with training in gang behavior, testified by affidavit that all three books are

products of a group led by David Lane, a former member of the Ku Klux Klan now in prison for his involvement in the murder of a Jewish radio talk show host. This and other evidence is quite sufficient to support the district court's decision.

Borzych makes an additional argument: that the Wisconsin prison system's Internal Management Procedure 6, on which the defendants relied in banning the three books, is overbroad and thus an impermissible infringement on his right to speech. (IMP 6 consolidates several former policies, including IMP 6 and IMP 6A. Although the former versions were consolidated into IMP 6 shortly before Borzych filed his suit in the district court, the defendants continue to refer to the prior designations.) IMP 6 provides in part:

> The Department does not permit activities that advocate racial or ethnic supremacy or purity, or that attacks a racial, religious or ethnic group, promotes hate crimes, jeopardizes the security and order of the institution, or violates federal or state laws or Department administrative rules, policies or procedures. . . .

> Literature that advocates racial or ethnic supremacy or purity, or that attacks a racial, religious or ethnic group, promotes hate crimes, jeopardizes the security and order of the institution, violates federal or state laws or Department administrative rules, policies or procedures will not be permitted.

Vagueness in this language holds out the prospect of misuse. A prison's attempt to exclude all literature that "advocates racial or ethnic supremacy" would be hard to sustain against a challenge under RLUIPA by an adherent to a religious sect whose creed includes distinctions among racial or ethnic groups. But IMP 6 cannot be described as

uniformly forbidden by either the statute or the first amendment. That we have already sustained Wisconsin's application of this rule to exclude three particular books shows as much.

Analysis under RLUIPA is specific, a point the Supreme Court made in *O Centro Espírita* when dealing with the Religious Freedom Restoration Act, see slip op. 9-10, and that is equally applicable to the RLUIPA. Neither statute requires (or permits) courts to nullify whole regulations just because they have a potential for improper application to a particular faith or belief. Whatever scope overbreadth analysis has in criminal prosecutions—a subject that has divided the Justices in the wake of *United States v. Salerno*, 481 U.S. 739, 745 (1987)—it has little or none in civil litigation dealing with prisons' internal operations. See *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986). Some open-ended quality is essential if a prison is to have any guidelines; it is impossible to foresee all literature that may pose a threat to safety and security. The overbreadth in this regulation is not "substantial" in relation to its proper applications. See *Virginia v. Hicks*, 539 U.S. 113, 123-24 (2003). Cf*. Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). If Wisconsin's prison system prevents Borzych from possessing additional books, those decisions may be challenged as made. It would be no more than an advisory opinion to attempt to resolve now all questions that could arise under the regulation. Cf. *Ayotte v. Planned Parenthood*, 126 S. Ct. 961, 967-68 (2006).

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—3-2-06