NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 18, 2008[*]
Decided June 19, 2008

**Before**

JOHN L. COFFEY, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 06-3943

JONATHON M. MARK,
  *Plaintiff-Appellant*,

  *v.*

DAQIAN GUSTAFSON, et al.,
  *Defendants-Appellees*.

Appeal from the United States
District Court for the
Western District of Wisconsin.

05 C 279

Barbara B. Crabb,
*Chief Judge*.

**O R D E R**

In June 2005 Jonathon Mark filed a complaint under 42 U.S.C. § 1983 alleging that over 20 people violated many of his constitutional and statutory rights during his incarceration at the Jackson Correctional Institute (JCI) in Wisconsin. Under the Prison Litigation and Reform Act, 28 U.S.C. § 1915A, the district court screened and dismissed

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

most of Mark's claims. Of the seven groups of claims that survived the initial screening, the district court dismissed four because Mark had failed to exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a). The district court dismissed another group of claims because Mark failed to prosecute them. Finally, the district court granted summary judgment to the defendants on the two remaining groups of claims. Mark appeals a variety of the district court's rulings, and we affirm in all respects.

We begin by addressing one of the two groups of claims that reached the summary-judgment stage. In reviewing a grant of summary judgment, we construe the facts in the light most favorable to the non-moving party. *See Steen v. Myers*, 486 F.3d 1017, 1019 (7th Cir. 2007). Mark refers to himself as a Wiccan, or ritual magician. Mark alleged that two correctional employees violated the First Amendment when during a routine search of his cell, they removed religious "seals" that Mark had affixed to the doors and walls.[2] The defendants submitted an affidavit from the captain in charge of security at JCI, who offered several justifications for JCI's policy prohibiting prisoners from affixing objects to cell walls. The captain said that the policy complied with Wisconsin regulations prohibiting inmates from damaging, altering, or misusing state property. *See* WIS. ADMIN. CODE DOC §§ 303.35, 303.36 (2008). Furthermore, he explained that the policy reduces the possibility of turf wars between cell mates, decreases housekeeping and maintenance costs, and improves the prison staff's ability to view the entire cell and to conduct comprehensive and expedient inspections of the cell's interior. The captain also mentioned that the policy allows inmates to keep items of property, not affixed to the walls, as long as they comply with other prison regulations. In his response to the summary-judgment motion, Mark reiterated that the seals were essential to his religious practice.

The district court held that Mark's claims failed under the Religious Land Use and Institutionalized Persons Act (RLUIPA), *see* 42 U.S.C. § 2000cc-1, because Mark had not shown how the seals had religious meaning to him. Furthermore, it held that the prison's policy of prohibiting inmates from attaching items to cell interiors was narrowly tailored to comply with the RLUIPA because Mark was allowed to keep the seals. In addition, because Mark's claims failed under the RLUIPA, the court held that they also failed under the more stringent standards of the First Amendment.

---

[2] Mark alleged in his complaint to the district court that the seals were destroyed, but in his internal prison complaint he said that the seals were merely removed. The district court construed Mark's claim as challenging the seals' removal, not their destruction, and because Mark has not asserted to us that the seals were destroyed, we will similarly assume that the seals were merely removed.

On appeal, Mark argues that the district court erred because the prison policy prohibiting him from affixing religious symbols to his walls interferes with a Wiccan practice that requires the seals to be placed at specific locations in his cell. We review the district court's grant of summary judgment de novo. *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007). Summary judgment is appropriate if Mark did not submit evidence to create a genuine issue regarding any material fact. *See id.* Mark's complaint alleged only a violation under the First Amendment and not the RLUIPA. Nevertheless, because Mark's other filings mentioned the RLUIPA, the district court analyzed his claim under both theories. We will do the same.

To establish a claim under the RLUIPA, a prisoner must show that a prison receiving federal funds has enacted a regulation that renders his exercise of a religious practice effectively impractical. *See* § 2000cc-1; *Koger v. Bryan,* 523 F.3d 789, 796, 799 (7th Cir. 2008); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). If the inmate succeeds, the burden shifts to prison officials to demonstrate that the regulation is the least restrictive means of furthering a compelling government interest. *See* § 2000cc-1; *Koger,* 523 F.3d at 796. A prison has a compelling interest in maintaining security, *see Borzych v. Frank*, 439 F.3d 388, 391 (7th Cir. 2006); *Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir. 1987), and we are particularly deferential to the judgment and expertise of prison administrators when we analyze whether a regulation is necessary to further that interest, *see Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005); *Koger,* 523 F.3d at 800.

Putting aside whether Mark has met the first part of the test, the prison has met the second. The defendants have articulated at least two ways in which the policy prohibiting inmates from affixing items in their cells promotes prison security—the prohibition facilitates thorough and expeditious inspections of prison cells and eliminates a likely source of conflict between cell mates. And as the defendants have shown, the regulation is narrowly tailored because it allows the inmates to possess all non-contraband items as long as the items are not affixed to anything. Mark has not explained to us how the prison could more narrowly tailor the prohibition without undermining the compelling interest it promotes. Thus, Mark's claim fails under the RLUIPA. Additionally, Mark's First Amendment claim fails because under the First Amendment, the prison may implement any neutral policy as long as the policy was not designed to interfere with religious practice. *See Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Borzych*, 439 F.3d at 390.

The district court also granted summary judgment on Mark's claims that several correctional employees conspired to transfer him to a prison facility that did not provide the necessary resources for him to pursue various legal claims. When the defendants moved for summary judgment, they presented an affidavit from Offender Classification Specialist

Michael Brown in which he asserted that Mark was transferred in anticipation of his upcoming release from prison because his social worker believed he was a low security risk and could benefit from the programs offered at another prison. The district court initially entered summary judgment against Mark when Mark failed to respond to the motion after being given an extension of time to respond, but the court vacated its judgment upon learning that Mark never received instructions on how to respond to the motion. Mark then received the instructions, but when he filed his response, he admitted that he could not create a genuine issue of material fact regarding these conspiracy claims unless he received more time to obtain the evidence. The court then granted summary judgment to the defendants.

On appeal, Mark appears to contend that the district court ignored evidence in the record that supports his conspiracy claims. But Mark cannot try to create a material factual dispute on appeal when he admitted to the district court that he could not. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Moreover, Mark failed to produce the evidence even though the district court granted Mark an extension to file his response, and he was then afforded additional time when the district court vacated the original grant of summary judgment against him. Indeed, Mark not only failed to provide any evidence, he failed to mention how the evidence he hoped to obtain would bolster his claims.

The district court also dismissed four groups of claims because Mark failed to exhaust his administrative remedies within JCI's Inmate Complaint Review System (ICRS), a fact that Mark did not dispute in the district court. Mark's failure to contest the exhaustion issue in the district court means that he cannot do so now, *see Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 608 n.4 (7th Cir. 2007), but, in any event, we agree with the district court that Mark did not exhaust these claims. We review the district court's exhaustion rulings de novo. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner cannot file a claim under § 1983 unless he first provides the prison with notice of his problem by complying with the prison's administrative and appellate process. *See* 42 U.S.C. § 1997e(a); *Dixon v. Page*, 291 F.3d 485, 491 (7th Cir. 2002). According to Wisconsin's ICRS, each prisoner complaint must clearly identify one, and only one, issue. WIS. ADMIN. CODE DOC § 310.09(1)(e) (2008).

The first non-exhausted group of claims are Mark's claims that several defendants violated the First Amendment by denying Mark a religious publication entitled "Llewellyn." The second non-exhausted group are Mark's claims that two defendants violated the Fourteenth Amendment by allowing another inmate to possess "Llewellyn." Mark filed a two-page document with the ICRS that is relevant to whether he exhausted these two groups of claims. Mark complained on the first page that he had been denied a "religious book" that described Wiccan practices, and on the second page he asserted that

about a month or two earlier he had been denied a religious publication entitled "Llewellyn." The complaint examiner denied the complaint and refused to allow Mark to possess "The Key of Solomon, the King," the only book to which the examiner believed Mark's document referred, because the book focused on the occult. Mark's ICRS appeal mentioned only "The Key of Solomon, the King" and not "Llewellyn." The district court held that Mark failed to exhaust these two groups of claims by neglecting to explain clearly in his ICRS complaint and appeal that he was disputing the denial of a book called "Llewellyn." Mark never mentioned the denial of the book "The Key of Solomon, the King" to the district court.

On appeal, Mark argues that he was unable to exhaust administrative remedies regarding the denial of "Llewellyn" because after he filed the ICRS complaint, a staff member promised that he would receive the book. Mark's argument misses the point because he does not address the district court's finding that he neglected to specify clearly in a separate complaint that he had been denied "Llewellyn." Regardless, even if he filed a separate complaint, Mark still failed to exhaust his administrative remedies by neglecting to inform the ICRS of the continued withholding of the book.

The next claim that Mark failed to exhaust is Mark's allegation that sergeant Brian Meshun transferred him from his prison unit in retaliation for Mark's complaint against Meshun for showing favoritism to another inmate. The ICRS complaint that Mark filed regarding his unit transfer did not mention Meshun, and Mark's appeal of the denial of that complaint also failed to mention Meshun. We agree with the district court that Mark failed to exhaust this claim because Mark's ICRS complaint and appeal did not identify Meshun. *See* 42 U.S.C. § 1997e(a); *Dixon*, 291 F.3d at 491.

The final non-exhausted claim is Mark's allegation that Chaplain Olson retaliated against him by losing Mark's "religious publications" that did not comport with Olson's religious beliefs. Mark does not challenge on appeal the district court's ruling that he failed to exhaust this claim, and so we need not further address it.

We now turn to the group of claims that the district court dismissed for failure to prosecute. In Mark's complaint to the district court, he claimed that John and Jane Doe, two prison psychologists, subjected him to cruel and unusual punishment by failing to treat his schizophrenia. The district court allowed Mark to proceed on these claims but warned him that to prosecute them he would need to amend his complaint when the two psychologists were identified. During discovery, the defendants contend that they sent Mark a letter identifying the individuals who best fit Mark's description of the Unit Psychologists. Mark, however, never amended his complaint to identify the two psychologists who allegedly

mistreated him. On its own motion, the court dismissed Mark's claims against the psychologists.

Mark asserts that he did not prosecute his claims against Jane and John Doe because he never received a letter identifying the psychologists. But the record contains a copy of the letter the defendants contend they sent to Mark. Regardless, there is no evidence in the record showing that Mark filed an ICRS complaint against any psychologist for inadequate mental heath care, and Mark does not assert that he did so. Thus, even if Mark had identified the defendants, the dismissal was appropriate because Mark failed to exhaust his claims against them. *See* § 1997e(a); *Dixon*, 291 F.3d at 491.

Finally, we have examined Mark's objections to the district court's dismissals at the screening stage. The district court applied the appropriate standards, and none of Mark's arguments has merit. Accordingly, the judgment is AFFIRMED.